UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ANDRE PIERRE, § | | |
| TDCJ # 01181284, § | | |
| § | | |
| Plaintiff, § | | |
| VS. § | CIVIL ACTION NO. 3:17-CV-0259 | |
| § | | |
| ADENIKE OGINNI, *et al*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Andre Pierre, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this lawsuit *pro se* complaining of inadequate medical care after he fell and injured his mouth. Defendant Edgar Hulipas, M.D., has filed a motion for summary judgment (Dkt. 17), and Pierre has filed a response (Dkt. 19). The motion is ripe for decision. After reviewing the pleadings and briefing, the applicable law, and all matters of record, the Court concludes that Defendant Hulipas' motion for summary judgment should be **GRANTED** and that all of Plaintiff's claims should be **DISMISSED** for the reasons that follow.

**I.     BACKGROUND**

Plaintiff originally brought this lawsuit against five Defendants at the Darrington Unit: Correctional Officer Adenike Oginni; Correctional Officer Smith (first name unknown); nurse Natalie Rainge;[1] Dr. Edgar Hulipas; and Warden Edgar Baker. On

---

[1] Rainge initially was named in Plaintiff's pleadings as "Natalie Painge."

September 5, 2018, the Court dismissed Plaintiff's claims against Warden Baker (Dkt. 22). Dr. Hulipas has filed a motion for summary judgment. Defendants Oginni, Smith, and Rainge have not appeared. Counsel for Baker previously informed the Court that she had been unable to locate the other TDCJ defendants based on the information in Plaintiff's complaint (Dkt. 10, at 1 n.2).[2]

On Friday, February 10, 2017,[3] at approximately 9:45 p.m., Plaintiff "blacked out and fell face first onto the concrete floor" at the Darrington Unit (Dkt. 1, at 4). The fall injured his mouth and teeth:

> When I came to, I was lying on the floor in a puddle of blood, surrounded by other inmates, who were telling me not to move, and yelling for help. One of my teeth was knocked out, another was hanging out, I had a hole through my lip, and the bones in the top bridge of my mouth were caved in. I was also bleeding profusely.

(*id*.). Plaintiff alleges in his pleadings and his summary judgment response that Officers Oginni and Smith were on the unit but did not call for medical help or assist him in getting to the infirmary (*id*. at 6; Dkt. 19-1, at 1). He states that, despite inmates calling for aid, Oginni took "approximately 10 to 15 minutes" to respond, seemed "unconcerned," and "went back to her duty station" without summoning medical staff (Dkt. 1, at 6). He alleges that Smith also seemed "unconcerned" and "made [Plaintiff] get dressed, walk down a flight of steep steps unassisted, and to the infirmary by [himself]" (*id*.).

---

[2] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

[3] Although the Complaint states that the injury occurred on February 10, <u>2016</u>, Plaintiff states that he made a typographical error in the Complaint and that the correct date is February 10, 2017 (Dkt. 19-1, at 1 & n.1).

Plaintiff arrived at the infirmary within thirty minutes of his fall.[4] Plaintiff alleges that Defendant Rainge, a licensed vocational nurse, "looked in [his] mouth, saw the damage, the blood, and missing tooth, and stated there was nothing she could do" even though Plaintiff told her that his teeth were broken (Dkt 1, at 6). He also alleges that she "refused" to call the doctor or check his dental records to verify that he previously had an overbite (*id*.; Dkt. 19, at 2). Instead, Rainge gave him a "sick call request" form, non-aspirin pain medication, and gauze (Dkt 1, at 6; Dkt. 19-1, at 1-2).

The medical records included with Hulipas' summary judgment motion contain Rainge's notes, which largely corroborate Plaintiff's account that he received an examination, pain medication, and gauze (Dkt 17-1, at 26). The notes further document bleeding, missing teeth, and the absence of swelling. Clinic personnel checked Plaintiff's vital signs twice during the encounter on the evening of February 10. They instructed Plaintiff about wound care, told him to return to the clinic if necessary, and released him to his cell at approximately 10:30 in stable condition (*id*.). Rainge informed Plaintiff that, because it was Friday night, he would be scheduled to see a dentist on Monday, February 13, 2017. *See id*. ("Offender talkative and voiced concerns about the appearance of his teeth. Notified offender that he would be scheduled to see the dentist on Monday due to weekend and would be called down to infirmary . . . Told offender to return to medical if he has further issues.").

---

[4] Plaintiff states that, due to Defendants' refusal to help him, his arrival at the infirmary was delayed by approximately thirty minutes (Dkt. 19, at 1-2). The actual delay may have been shorter, given that clinic records state that he arrived at 10:00 p.m. (Dkt. 17-1, at 26). For purposes of this opinion, the Court views all facts in the light most favorable to Plaintiff and credits Plaintiff's estimation.

The next morning at approximately 8:00 a.m., Plaintiff returned to the infirmary and was quickly sent to the emergency room. Plaintiff claims that his serious injury was immediately apparent to the first shift nurse, who promptly notified Dr. Hulipas:

> The next morning, another officer, Brown, heard about my fall and came to check on me. When she saw the extent of my injuries, she rushed me back to the infirmary. The first shift nurse saw the damage to my face, immediately checked my dental records, discovered that I no longer had an overbite, and called the doctor. I was sent back to 6-tank to await the doctor to return the call. Not long afterward, I was called out, and rushed to Ang[le]ton Hospital, where it was discovered I had serious facial trauma that would require p[la]stic surgery. I was informed that I should have immediately been rushed to the emergency room because my injuries were so severe.

(Dkt. 1, at 6-7; *see* Dkt. 19-1, at 2). The clinic records generally corroborate Plaintiff's account and document Plaintiff's pain, gum abrasions, and multiple missing or loose upper teeth (Dkt. 17-1, at 8-12). At 8:20, after the nurse had notified Dr. Hulipas of Plaintiff's condition, Plaintiff was released to security for transport to the emergency room (*id*. at 11).

At approximately 4:00 p.m. the same day, Plaintiff was released from the emergency room with a diagnosis of "maxillary fracture with upper central tooth out of the socket and left one missing" (*id*. at 14-15). He was instructed to see a dentist as soon as possible, to return later in the week to see a plastic surgeon, and to stay on a dental soft diet. Emergency room physicians prescribed antibiotics and instructed him to continue as needed with the pain medication he had started at the clinic the night before (*id*.) (instructing Plaintiff to begin taking amoxicillin and to continue other medications, including ibuprofen and aspirin, at previous dosage).

On Monday, February 13, 2017, Plaintiff returned to the infirmary at the Darrington Unit for an appointment with Dr. Hulipas (Dkt. 17-1, at 30-31). Dr. Hulipas' notes indicate that Plaintiff "apparently . . . had 'syncopal' episode, fell on his face and knocked off front tooth and broke 3 teeth" (*id*. at 30). Plaintiff was instructed to keep his plastic surgery appointment later in the week (*id*. at 31).

On February 22, 2017, Plaintiff had oral surgery at UTMB's Hospital Galveston for extraction of three teeth (*id*. at 65; *id*. at 94-101). At a follow-up appointment on February 28, 2017, the provider noted that all extraction sites were healing within normal limits (*id*. at 33-34). Plaintiff received additional follow-up dental treatment at Hospital Galveston in March, April, and May (*id*. at 41-61).

Plaintiff alleges that Rainge provided inadequate medical care on the evening of February 10 because she should have called a medical provider immediately (Dkt. 1, at 7). He points to the emergency nursing protocols promulgated by the prison's Correctional Managed Health Care ("CMC") and alleges that his symptoms should have prompted Rainge to place an immediate call to Dr. Hulipas. *See id*. at 20-21 (nursing protocol in Plaintiff's medical record states to contact provider immediately and initiate an urgent care record in cases with a displaced tooth, avulsed tooth, possible skeletal injury, loss of consciousness, or head injury). Plaintiff also points out that Rainge's notes were not entered until 24 hours after she treated him in the clinic. *See* Dkt. 19-1, at 2 ("Rainge only recorded the incident approximately 24 hours later, after I had been rushed to the emergency room and it was discovered that I had serious facial trauma"); Dkt. 19, at 5 (alleging that Rainge's 24-hour delay violated CMC policies and procedures). He

alleges that Rainge's "failure to follow proper protocol for injuries such as [his] resulted in undue pain, mental anguish, and emotional trauma" (Dkt. 1, at 7). He does not allege that any additional physical injury resulted from the 10-hour delay between 10:00 p.m. and 8:00 a.m.

Plaintiff also brings a claim against Dr. Hulipas, alleging that Hulipas is liable for failure to properly train Rainge to follow the CMC procedures and protocols:

> Dr. Hulipas is the attending doctor on the Darrington [U]nit and responsible for ensuring that his staff is properly trained in how to recognize and respond to medical emergencies. Nurse [R]ainge's failure to properly recognize the extent of my t[r]aumatic injuries and her failure to follow proper protocol by contacting the on-call doctor, was a direct result of Dr. Hulipas' failure in his duty to properly train his staff. As a result, I was denied timely and proper medical and emergency care.

Dkt. 1, at 7. *See* Dkt. 19, at 4 ("The crux of plaintiff's claim against defendant Hulipas rises from his failure to train his subordinate Natalie Rainge in the proper protocol to follow in responding to medical emergencies and in his failure to supervise her in her role as a contracted nurse").

Defendants submit an expert affidavit from Steven Bowers, M.D., legal coordinator for UTMB Correctional Managed Care, who reviewed Plaintiff's records. Dr. Bowers states that Rainge, as a vocational nurse, was not authorized to make medical decisions regarding Plaintiff:

> [Rainge] cannot make medical decisions, rather, she must refer the inmate to a medical provider, which is what she did. Ms. Rainge referred Mr. Pierre to be seen by Dr. Hulipas. Additionally, Mr. Pierre was quickly seen in the emergency room and shortly thereafter, he was seen and treated by specialists, which then led to him having a successful oral surgery.

(Dkt. 17-1, at 65). Bowers further avers, "Based on my education, training, and experience as a physician both in the community and correctional settings, I believe that the medical treatment provided to Mr. Pierre was both appropriate and performed within the standard of care" (*id.*).

Defendants also present CMC policies regarding dental treatment, dental scheduling, daily processing of complaints, and fall precautions (Dkt 17-1, at 106-129). They direct the Court's attention to CMC policy for the highest priority cases needing "emergency/urgent" dental care, which provides that the patient "will receive definitive treatment within 14 days after a diagnosis is established by a dentist" (Dkt. 17-1, at 107).[5] Defendants argue that, because twelve days passed between Plaintiff's injury on February 10 and his oral surgery on February 22, his treatment complied with policy guidelines.

As relief for his claims, Plaintiff seeks compensatory damages for "emotional, mental, and prolonged physical pain" resulting from Defendants' alleged failure to properly respond to his medical emergency with timely and adequate medical care (Dkt. 1, at 3, 7).

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and

---

[5] *See also* Dkt. 17-1, at 114, 116 (CMC policies and guidelines for processing dental complaints state that offenders with possible emergent or urgent conditions "will be afforded immediate access to health services for assessment" and that, "[w]hen necessary," the inmate will be referred to a dentist and "seen within 10 business days of receipt of the original [Sick Call Request]").

dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### B. Summary Judgment—Rule 56

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); see *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise,

Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III. ANALYSIS

### A. Official Immunity

A claim against a TDCJ official in his or her official capacity is a claim against TDCJ, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly

abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. Of Elem. And Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

To the extent Plaintiff brings any claims for money damages against Defendants in their official capacities, the state is immune under the Eleventh Amendment. The claims therefore will be dismissed for lack of jurisdiction.

### B. Qualified Immunity

Dr. Hulipas has invoked qualified immunity and Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted).

A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Given the circumstances of this case, the Court proceeds to the analysis of Plaintiff's substantive claim.

C.   **Claim against Dr. Hulipas**

Plaintiff alleges that Dr. Hulipas is liable for his failure to train Rainge to respond to Plaintiff's emergency condition. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt*, 822 F.3d at 180; *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).

To prevail on a failure-to-train claim under 42 U.S.C. § 1983, Plaintiff must demonstrate that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F. 3d 375, 381 (5th Cir. 2005). "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017) (internal quotation marks and citation omitted). The plaintiff also must "focus . . . on the adequacy of the training program in relation to the tasks the particular officers must perform." *Goodman*, 571 F.3d at 395 (internal citation and

quotation marks omitted). To show the failure to train amounted to deliberate indifference by the defendant, a plaintiff "usually must demonstrate a pattern of violations," rather than a single incident. *Id*. (internal citation and quotation marks omitted). The Fifth Circuit has rejected "attempts by plaintiffs to present evidence of isolated violations and ascribe those violations to a failure to train." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010).

Plaintiff alleges that Dr. Hulipas failed to train Rainge to follow procedures and protocol because on February 10, 2017, Rainge failed to immediately call a medical provider, to fill out proper forms, and to recognize a medical emergency that "needed further medical care beyond mere non-aspirin and gauze." Dkt. 19, at 7. He claims that, "[a]s a result" of Dr. Hulipas' actions or omissions, he was "denied timely and proper medical and emergency care" (Dkt. 1, at 7). *See* Dkt. 19, at 5-6 (alleging that Rainge's failures to call provider and follow protocol were a "direct result of defendant Hulipas's failure to train and supervise Rainge").

1. **Failure to Train or Supervise Rainge**

Regarding the first prong of his failure-to-train claim, Plaintiff makes no allegations regarding the training program used for Rainge, Dr. Hulipas's involvement in the training, or specific inadequacies in the training. Under the controlling legal authorities, therefore, Plaintiff has failed to demonstrate a genuine issue of material fact on this prong. *See Trammell*, 868 F.3d at 345 (affirming summary judgment for defendant because plaintiff "fails to identify any specific inadequacies in [the city's] training materials or procedures which give rise to his claim"); *Zarnow*, 614 F.3d at 170

(affirming summary judgment for defendant and noting that the plaintiff's summary judgment briefing did not "reference any evidence concerning the procedures used to train the officers, the officers' qualifications, or direct references to the particular inadequacies of their . . . training").[6]

### 2. Violation of Plaintiff's Rights

The second prong of a failure-to-train claim requires Plaintiff to demonstrate that alleged training deficiencies by Dr. Hulipas caused a violation of Plaintiff's rights. Plaintiff alleges that, because of Dr. Hulipas' failure to train or supervise Rainge, Rainge failed to follow procedures and to immediately call a medical provider on February 10, in violation of his Eighth Amendment right to adequate medical care (Dkt. 1, at 7; Dkt. 19, at 5-6). As noted above, Rainge discharged Plaintiff to his cell in stable condition at approximately 10:30 p.m., after providing him pain medication, gauze, a referral, and instructions for wound care. Plaintiff returned to the clinic at approximately 8:00 a.m. the next morning, and the nurse on duty then called Dr. Hulipas and arranged for transport to the emergency room. The delay allegedly caused by Rainge therefore was approximately ten hours long.

Under the Eighth Amendment, a plaintiff must demonstrate "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate

---

[6] The fact that Dr. Hulipas supervised Rainge, without more, is insufficient to state a claim because Section 1983 does not impose individual liability on a supervisors under theories of vicarious or *respondeat superior* liability. *See Davis*, 406 F.3d at 381.

indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*." *Rogers*, 709 F.3d at 410 (emphasis in original) (internal citation, quotation marks, and alteration omitted).

Plaintiff's argument that Rainge violated his Eighth Amendment rights fails because he has not demonstrated a genuine issue of material fact that the 10-hour delay allegedly attributable to Rainge caused him "substantial harm."[7] Although Plaintiff alleges that he suffered pain during the ten-hour delay, he has stated that he already was in pain from his fall when he arrived in the infirmary on February 10. According to his pleadings, Rainge provided him with pain medication (Dkt. 1, at 6). At the emergency room on February 11, the emergency room physician continued the same pain medication, without change (Dkt. 17-1, at 15) (continuing ibuprofen, aspirin, and other medications; starting new prescription for antibiotics). Plaintiff has pointed the Court to no evidence of "substantial harm" resulting from the overnight delay.[8]

---

[7] The Court notes that Plaintiff does not allege any denial of, or delay in, medical care for his injuries at any later time. *See McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where extensive medical records documented that the prisoner was not denied medical attention).

[8] In the absence of a specific physical injury attributable to Rainge, the damages sought by Plaintiff for "mental anguish" and "emotional trauma" are unavailable. *See* 42 U.S.C. § 1997e(e); *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014).

Plaintiff also complains that Rainge's triage assessment and actions on February 10 were inadequate, and that the nursing protocol in his medical records (Dkt. 17-1, at 20-21) should have prompted Rainge to call a medical provider immediately. Plaintiff's disagreement with Rainge's exercise of judgment does not suffice to show deliberate indifference. *See Rogers*, 709 F.3d at 410. Indeed, even if Plaintiff could prove that Rainge was negligent or grossly negligent in her assessment and her decision not to call Dr. Hulipas immediately on the night of February 10, such negligence would not adequately state a claim for relief under the deliberate indifference standard of the Eighth Amendment. *See Hinojosa*, 807 F.3d at 665.

For all of the reasons above, Plaintiff has not demonstrated a genuine issue of material fact that Rainge violated his constitutional rights. *See Easter*, 467 F.3d at 463. Therefore, his claim against Dr. Hulipas fails on the second prong.

### 3. Deliberate Indifference by Dr. Hulipas

Finally, Plaintiff has not demonstrated a genuine issue of material fact as to "deliberate indifference" on the part of Dr. Hulipas, as required for the third prong. Plaintiff points to Dr. Hulipas' argument that Rainge's position as a licensed vocational nurse precluded her from making medical decisions and argues that, because Dr. Hulipas left her to "make all the medical decisions of the unit" he failed to provide proper emergency coverage at the Darrington infirmary and thus was clearly deliberately indifferent (Dkt. 19, at 6). To the extent Rainge was left to make assessment decisions at the clinic on the evening of February 10, Plaintiff presents no competent summary judgment evidence that Rainge's duties and authority that night was attributable to any

deliberately indifferent action or decision by Dr. Hulipas, as opposed to standard prison procedures. Moreover, Plaintiff's allegations regarding a single incident on the evening of February 10, 2017, are insufficient to demonstrate a pattern of violations that could support a showing of deliberate indifference by Dr. Hulipas. *See Zarnow*, 615 F.3d at 170; *Goodman*, 571 F.3d at 595.

### 4. Conclusion

Summary judgment is granted for Dr. Hulipas on Plaintiff's failure to train claim. For essentially the same reasons, Dr. Hulipas is entitled to qualified immunity. *See Carroll*, 800 F.3d at 169.[9]

### D. Claims against Oginni, Smith, and Rainge

Defendants Oginni, Smith, and Rainge have not been served with process. Plaintiff alleges that these Defendants violated his Eighth Amendment right to adequate medical care. *See Easter*, 467 F.3d at 463 (under the Eighth Amendment, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain") (internal citations and quotation marks omitted). The Court examines whether Plaintiff's claims against these Defendants are appropriately dismissed under the 28 U.S.C. § 1915(e)(2)(B) and 42 U.S.C. § 1997e.

---

[9] Plaintiff argues that the qualified immunity question must be decided by a jury (Dkt. 19, at 3-4). However, clear Fifth Circuit authority allows resolution of the issue on summary judgment if the non-moving party fails to demonstrate a genuine issue of material fact. *See, e.g.*, *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016).

Plaintiff alleges that Officers Oginni and Smith were "deliberately indifferent" to his serious medical need because they were present on the unit on February 10, 2017 but did not assist him or call medical personnel after he fell, presumably resulting in a delay in Plaintiff's arrival at the infirmary and the medical treatment he received there (Dkt 1, at 6-7; Dkt. 19-1, at 1). However, by Plaintiff's own account, he reached the infirmary after a delay of, at the most, thirty minutes (Dkt. 19, at 1-2). More importantly, Plaintiff has not alleged that any "substantial harm" resulted from his unassisted walk to the infirmary or the thirty-minute delay in treatment allegedly caused by the Officers Oginni and Smith. *See Rogers*, 709 F.3d at 410 (a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*") (emphasis in original) (internal citation, quotation marks, and alteration omitted).[10] His claims against them therefore will be dismissed under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief can be granted

As for Rainge, Plaintiff alleges that she provided inadequate medical care and was deliberately indifferent to his serious medical need when she treated Plaintiff on the evening of February 10 because she should have checked his prior dental records and called a medical provider immediately. As noted above, Rainge provided Plaintiff with pain medication, gauze, a referral, and instructions for wound care, and discharged him in stable condition. The Court held above, when deciding the second element of Plaintiff's failure-to-train claim against Dr. Hulipas, that Plaintiff failed to demonstrate a genuine

---

[10] To the extent Plaintiff seeks recovery for emotional or mental suffering, any such recovery is barred under 42 U.S.C. § 1997e(e) because Plaintiff has not alleged any physical injury attributable to Defendants' alleged conduct.

issue of material fact as to whether Rainge denied him adequate medical care in violation of the Eighth Amendment. This ruling necessarily forecloses Plaintiff's separate claim against Rainge, which involves identical issues of law and fact. Plaintiff's claim against Rainge therefore will be dismissed with prejudice.

IV. **CONCLUSION**

For the reasons stated above the Court **ORDERS** that

1. Defendant Hulipas' motion for summary judgment (Dkt. 17) is **GRANTED**. All of Plaintiff's claims against Defendant Hulipas are **DISMISSED with prejudice**.

2. Plaintiff's claims against Defendants Oginni, Smith, and Rainge are **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B), 42 U.S.C. § 1997e, and other authorities cited above.

3. All other pending motions, if any, are **DENIED as moot**.

The Clerk is instructed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas, this 23rd day of January, 2019.

_____
George C. Hanks Jr.
United States District Judge